O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON CLARENDON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. EDCV 09-1045-DTB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

　　　Plaintiff filed a complaint ("Complaint") on June 18, 2009, seeking review of the Commissioner's denial of her application for disability insurance benefits. The matter was transferred to this Court's calendar on July 1, 2009. Now pending before the Court are plaintiff's Motion for Summary Judgment for Remand or Reversal ("Pl. Mot.") and defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def. Mot."). For the reasons discussed below, the Court reverses the decision of the Commissioner and remands for further administrative proceedings.

/ / /

/ / /

/ / /

/ / /

1

**DISPUTED ISSUES**

As reflected in the parties' motions, the disputed issues here are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered plaintiff's testimony and made proper credibility findings.

2. Whether the ALJ properly considered the consultative examiner's opinion.

3. Whether the ALJ erred in finding that plaintiff could perform the job of table worker and hand packager.

4. Whether the ALJ posed a complete hypothetical question to the vocational expert.

**DISCUSSION**

**I.     Reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's testimony.**

The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Administrative Record ["AR"] 517.) The ALJ also found petitioner's testimony at the remand hearing to be not credible "to the extent it is not consistent with the findings herein above since it is not supported by the objective medical findings, the intensity of her medical treatment, or the severity of symptoms reported to the treating sources." (AR 518.) Based upon this assessment of plaintiff's credibility, plaintiff argues in Issue No. 1 that the ALJ improperly found that she lacked credibility. Specifically, plaintiff asserts that "the ALJ alleged that the plaintiff's testimony is 'not supported by the objective medical evidence,' yet the ALJ failed to cite any specific evidence or exhibits to support his holding." (Pl. Mot. at 3.) Further, plaintiff asserts that "the ALJ selectively cited only those parts of the

plaintiff's testimony that supported his own conclusion but failed to cite those parts of her testimony that are favorable to plaintiff." (Pl. Mot. at 3-4.)

   An adverse finding of credibility must be based upon clear and convincing evidence absent affirmative evidence of malingering and "[w]here the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms simply because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991). In addition, the ALJ "must identify what testimony is credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). A credibility finding must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors that may be considered include: (1) The claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimants daily activities; (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Thomas, 278 F.3d at 958-59.

   The ALJ considered many of these factors when he determined that plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms" were not credible. First, the ALJ considered the medical evidence and the extent to which it supported plaintiff's claimed severity of symptoms. With respect to plaintiff's alleged pain, the ALJ adopted as the residual functional capacity ("RFC") the limitations assessed by the consultative orthopedic medical examiner, Dr. Bunsri T. Sophon. (AR 558-63.) Dr. Sophon conducted a physical examination

3

of plaintiff and diagnosed her with the following conditions: (1) Cervical disc disease, status post anterior C4, C5, C6, and C7 spinal fusion; (2) lumbosacaral strain; (3) impingement syndrome, status post arthrotomy and decompression, left shoulder; and (4) medial epicondylitis, left elbow, status post surgical release. (AR 556.) Dr. Sophon noted that plaintiff demonstrated "non-painful restriction of motion of the cervical and lumbar spine," as well as "painful restriction of motion of the left shoulder, and weakness of the left minor hand grip." (AR 556.) With regard to plaintiff's ability to work, Dr. Sophon opined: (1) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; (2) plaintiff was limited to frequent reaching, with no above-shoulder-level work activity with the left arm; and (3) plaintiff was restricted to sitting, standing, and walking six hours of an eight-hour work day. (AR 556-63). Additionally, the ALJ noted, "there is no evidence of new medical opinions in the recorded [sic] other than Dr. Ahmed's finding of 'total temporary disabled,' i.e., the inability to perform past relevant work, which is not at issue in this case . . . there has been no changes [sic] to [plaintiff's] medical condition[.]" (AR 517.)

The ALJ also found that plaintiff's level of activity was not consistent with her claim of disability. The ALJ noted, "[plaintiff] denied any productive activity and said she had to lie down all day. She admitted that she does drive and that she had renewed her California Drivers Licence in 2008 without restriction and that she had resumed getting workers' compensation benefits in August 2008[.]" (AR 518.) In Thomas, the claimant's ability to perform household chores was considered as inconsistent with the claimant's subjective complaints and as a basis for finding that she lacked credibility with respect to her descriptions of pain. Thomas, 278 F.3d at 959. Here, the ALJ's finding that the description of pain was inconsistent with her ability to drive and renew her driver's license without restriction was a rational interpretation of the evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.
/ / /

2008) (ALJ may consider ordinary techniques of evaluating credibility, including daily activities).

Given these considerations, it appears that, in making the credibility finding, the ALJ considered many factors, including plaintiff's daily activities and the medical evidence. Where the ALJ's credibility finding is supported by substantial evidence, the Court "may not engage in second-guessing." Thomas, 278 F.3d at 959. Accordingly, the Court will not disturb the ALJ's finding that plaintiff's testimony had limited credibility.

## II. Reversal is not warranted based on the ALJ's alleged failure to properly consider the consultative examiner's opinion.

In Issue No. 2, plaintiff argues that the ALJ "failed to discuss . . . in his decision" the comprehensive psychiatric evaluation dated October 7, 2008. Plaintiff asserts that the evaluation, performed by Dr. Ana Maria Andia, reported that plaintiff "is moderately limited in her ability to maintain regular attendance in the work place and perform activities on a consistent basis due to her chronic pain." (Pl. Mot. at 5.)

The opinion of the examining physician, if supported by clinical tests and observations upon examination, constitutes substantial medical evidence and may be relied upon by the ALJ in order to determine a claimant's RFC. Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and

///

legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).

Here, contrary to plaintiff's allegations, the ALJ discussed Dr. Andia's evaluation in finding that plaintiff does not have an impairment that meets or medically equals a listed impairment. As the ALJ noted, "the mental status examination finding on October 7, 2008 were [sic] well within normal limits except for complaints of depression and congruent affect." (AR 516.) The ALJ further noted that Dr. Andia "diagnosed mood disorder secondary to medical condition . . . with major depressive like feature, assessed a global assessment of functioning ("GAF") score of 55, indicating a moderate degree of limitation, and recommended mental health treatment . . . ." (AR 516, 543-47.) In assessing plaintiff's mental impairment, the ALJ found, "[i]n activities of daily living and social functioning, [plaintiff] had slight restriction. With regard to concentration, persistence, or pace, she had moderate difficulties. As for episodes of decompensation, she had experienced no episodes of decompensation, which were of extended duration, through the last date insured." (AR 516.) Further, in determining plaintiff's RFC to perform light work, the ALJ noted plaintiff's depression and found that she was limited to "simple, routine, repetitive nonpublic tasks." (AR 517.) Dr. Andia's findings, as well as the record as a whole, do not suggest that plaintiff's alleged mental impairment meets or equals a listed impairment. By holding the same, the ALJ clearly accepted Dr. Andia's findings, and took them into consideration in the disability determination.[1]

---

[1] Plaintiff asserts that the ALJ improperly ignored Dr. Sophon's findings regarding plaintiff's limitation to occasional walking on uneven terrain. (Pl. Mot. at 5.) The Court notes that Dr. Sophon did not make such a finding. Indeed, Dr. Sophon noted in his assessment that plaintiff could walk a block at a reasonable pace on rough or uneven surfaces. (AR 563.) Accordingly, plaintiff's assertion that the ALJ ignored a finding of Dr. Sophon that he did not make is without merit.

**III.   Reversal is not warranted based on the ALJ's alleged failure to pose a complete hypothetical question to the vocational expert.**

In Issue No. 4, plaintiff argues that the ALJ failed to pose a complete hypothetical question to the vocational expert. Specifically, plaintiff asserts that the ALJ failed to set out "each of the plaintiff's particular limitations and restrictions," including "factors bearing upon [p]laintiff's moderate limitation in her ability to maintain regular attendance in the work place and perform activities on a consistent basis due to her chronic pain . . . [and] factors bearing upon plaintiff's over-heading [sic] reaching limitation with her left arm . . . ." (Pl. Mot. at 7-8.)

To constitute substantial evidence upon which an ALJ may properly rely in reaching a disability determination, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.'" Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). However, the hypothetical need not include limitations that the ALJ properly determines are not supported by substantial evidence because "[t]he vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." Magallanes, 881 F.2d at 756 (citing Embrey, 849 F.2d at 422).

Here, since the ALJ properly found that plaintiff does not have a mental impairment that meets or medically equals a listed impairment, it was not necessary for the ALJ to include plaintiff's moderate limitation in her ability to maintain regular attendance in the work place, as noted by Dr. Andia. See Osenbrock, 240 F.3d at 1163-64; see also Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's hypothetical question to a vocational expert that excluded alleged limitations

properly rejected by the ALJ). Further, contrary to plaintiff's assertions, the ALJ included factors bearing upon plaintiff's "over-heading [sic] reaching limitation with her left arm" in the hypothetical question posed to the vocational expert. At the administrative hearing, the ALJ gave the vocational expert a copy of Dr. Sophon's assessment of plaintiff and asked him to consider the assessment in forming his opinion. (AR 607). Under the heading, "Use of Hands," Dr. Sophon indicated that plaintiff could perform overhead reaching with her right hand frequently (1/3 to 2/3) and could never perform overhead reaching with her left hand. Dr. Sophon noted that plaintiff's impingement syndrome associated with her left shoulder was the basis for his assessment (AR 560.) After reading Dr. Sophon's assessment, the following colloquy between the ALJ and the vocational expert ensued (AR 607-08):

> [ALJ]: And [the assessment] describes work at what, if any, exertional level?
>
> [Vocational Expert]: At the full range of light work,[2] Your Honor.
>
> [ALJ]: That would not permit the performance of past relevant work?
>
> [Vocational Expert]: Correct.
>
> [ALJ]: In addition to that assessment for light exertional

---

[2] Under 20 C.F.R. § 416.967(b), light work is defined as follows: Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

|  |  |
|---|---|
|  | work consider that the work should involve only simple, routine, repetitive, non-public tasks. With that entire constellation of capacities and limits is there any kind of unskilled or entry level work that might be performed?" |
| [Vocational Expert]: | Yes, sir, there'd be a broad range of jobs that would be performable given that hypothetical. For example, there would be table workers, hand packagers, there'd be a broad range of simple assembler positions. |

As the hypothetical question posed to the vocational expert was the same as the ALJ's RFC determination, which was based on medical assumptions properly supported by the evidence (including Dr. Sophon's assessment), the question was not incomplete. Osenbrock, 240 F.3d at 1163.

**IV.     Reversal is warranted based on the ALJ's vocational determination.**

In Issue No. 3, plaintiff argues that the ALJ improperly held that plaintiff is capable of performing the jobs of table worker and hand packager. Specifically, plaintiff argues that the ALJ's holding that the plaintiff can perform the jobs of hand packager, Dictionary of Occupational Titles ("DOT")[3] No. 920.587-018, and table operator, DOT No. 613.682-026, deviates from the job descriptions contained in the DOT, and the ALJ failed to explain this deviation. With respect to the job of table operator, plaintiff asserts that the job requires a Reasoning Level of 3 and "Reaching:

---

[3]     The DOT is the Commissioner's primary source of reliable vocational information. Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

9

Frequently - Exists from 1/3 to 2/3 of the time." With respect to the job of hand packager, plaintiff asserts that "according to the DOT, the job of Hand Packager . . . is considered medium work, yet . . . the ALJ's residual functional capacity is for light work." (Pet. Mot. at 6-7.)

At the administrative hearing, the vocational expert testified that, based on the hypothetical question posed to him by the ALJ, there was a "broad range" of jobs that plaintiff would be able to perform given her limitations. The vocational expert stated, "[f]or example, there would be table workers, hand packagers, there'd be a broad range of simple assembler positions." (AR 607-08.) The vocational expert further testified that there were more than 5,000 such jobs in the "broad regional economy." (AR 608.) In finding that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, the ALJ stated (AR 519):

> However, [plaintiff's] ability to perform all or substantially all of the requirements of [light work] was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, I asked the vocational expert whether jobs existed in the national economy for an individual with [plaintiff's] age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as table worker, packager, assembler, and that there are thousands of such jobs in the local regional economy, all earnable by less than thirty days of on-the-job training and demonstration. [¶] Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. [¶] Based on the testimony of the vocational expert, I conclude that, considering

>[plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.

The Social Security Administration relies "primarily on the DOT. . . . Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." Id. "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Id. at *4. In such situations, the adjudicator "will [a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." Id. "If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id. In view of the requirements of SSR 00-4p, an ALJ may not rely on a vocational expert's testimony about the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT and whether there is a reasonable explanation for any deviation. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The failure to do so may be harmless where there is no conflict or where the vocational expert provides sufficient support justifying any deviations. See id. at 1154 n.19.

According to the DOT, the job of hand packager is defined as medium work. See DOT No. No. 920.587-018. Because the ALJ determined that plaintiff's RFC was for light work, plaintiff could not perform the job of hand packager as defined in the DOT. Here, the vocational expert testified that, in light of plaintiff's limitation to light work, there were "well in excess of 5,000" jobs in the regional economy that plaintiff could perform, although the vocational expert did not specify how many table worker, hand packager, or simple assembler positions existed. (AR 608.) The

ALJ, however, did not ask the vocational expert the basis for this testimony or whether the testimony conflicted with the DOT. Nonetheless, the ALJ ultimately adopted the vocational expert's testimony in his decision. (AR 519.)

Defendant concedes that the DOT's definition of hand packager as medium work is inconsistent with plaintiff's RFC. Defendant maintains, however, that the error was harmless because "it was inconsequential to the ultimate non-disability determination." Moreover, defendant asserts that the vocational expert accurately identified the positions of table operator and simple assembler as consistent both with plaintiff's RFC and the DOT, which defines both jobs as light work with frequent reaching. (Def. Mot. at 8, 8 n.5.)

Without adequate supporting evidence, however, defendant's claim that the omission was inconsequential is insufficient to merit a harmless error determination. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); cf. Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have . . . found harmless errors that occurred during a procedure or step the ALJ was not required to perform."). Rather, when the ALJ fails to ask the vocational expert whether his testimony conflicts with the DOT, such a procedural error is harmless if either there is no conflict or the vocational expert had provided sufficient support for his conclusion so as to justify any potential conflicts. Massachi, 486 F.3d at 1154 n.19.

Here, the vocational expert did not provide a reasonable explanation for deviating from the DOT. Reasonable explanations include that the DOT does not provide information about all occupations, information about a particular job not listed in the DOT may be available elsewhere, and the general descriptions in the DOT may not apply to specific situations. Massachi, 486 F.3d at 1153 n.17. With respect to the job of hand packager, the vocational expert provided no explanation whatsoever for his opinion that plaintiff could perform the job of hand packager, defined in the DOT as medium work, when the plaintiff's RFC was for light work. With respect to the job of table operator, the vocational expert did not explain why

plaintiff could perform this job, which requires Level 3 reasoning, in light of plaintiff's limitation to "simple, routine, repetitive, non-public tasks." (AR 607.) Most district courts in this Circuit have found Level 3 reasoning to be inconsistent with an RFC for simple, repetitive labor. See, e.g., Torrez v. Astrue, No. 1:09-cv-00626-JLT, 2010 WL 2555847, at *9 (E.D. Cal. June 21, 2010); Bagshaw v. Astrue, No. EDCV 09-1365-CT, 2010 WL 256544, at * 5 (C.D. Cal. Jan. 20, 2010); Pak v. Astrue, No. EDCV 08-714-OP, 2009 WL 2151361, at *7 (C.D. Cal. July 14, 2009). Therefore, the ALJ's error in failing to inquire whether the vocational expert's testimony conflicted with the DOT was not harmless.

The ALJ further erred by not explaining in his written decision how the conflict between the vocational expert's testimony and the DOT was resolved. Instead, as stated above, the ALJ noted the vocational expert's testimony that an individual with plaintiff's age, education, work experience, and RFC would be able to perform "the requirements of representative occupations such as table worker, packager, assembler," and that thousands of such jobs existed in the regional economy. (AR 519.) The ALJ found that, based on the vocational expert's testimony, plaintiff "was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 519.)

SSR 00-4p provides:
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

///
///

SSR 00-4p, 2000 WL 1898704, at *4. While Massachi does not expressly address SSR 00-4p's requirement that the ALJ explain any conflicts in his written decision, the Ninth Circuit stated that "[t]he procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1153. Where the ALJ does not follow the procedural requirements of SSR 00-4p, the Court cannot determine whether substantial evidence supports the ALJ's findings at step five of the sequential evaluation process. See id. at 1153-54.

Accordingly, the Court finds that substantial evidence does not support the ALJ's determination that plaintiff could perform other work in the national economy. Therefore, the Court remands this case for further proceedings.

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

This is not an instance where no useful purpose would be served by further administrative proceedings or where the record has been fully developed. Rather, this

is an instance where additional administrative proceedings could remedy the defects in the ALJ's decision.

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[4]

DATED: January 10, 2011

*/s/ David T. Bristow*

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.